# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Electric Last Mile Solutions, Inc., *et al.*,[1] | Case No. 22-10537 (MFW) <br> (Jointly Administered) |
| Debtors. | **Re: D.I. 67** |

**OBJECTION OF THE CHAPTER 7 TRUSTEE TO THE
INTERESTED PARTIES ASHLEY MORROW AND ALEX CAMARDA'S
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

David W. Carickhoff, chapter 7 trustee (the "<u>Trustee</u>") for the estates (the "<u>Estates</u>") of the above-captioned Debtors, hereby objects to the Motion [D.I. 67] of Ashley Morrow and Alex Camarda ("<u>Movants</u>") seeking relief from the automatic stay, and respectfully states as follows:

## PRELIMINARY STATEMENT

1. By their Motion, Movants ask this Court for extraordinary relief. Less than two months into these large and complex chapter 7 cases, Movants sought stay relief so they can sue the Debtors and the Trustee in Delaware state court to compel the production of a litany of documents. If granted, the relief requested would represent a massive disruption to the administration of the Estates and the ongoing sale process and could lead to a floodgate of requests from other parties.

2. Contrary to Movants' assertion, the relief requested in the Motion is directly at odds with section 362 of the Bankruptcy Code. Such relief is also prohibited by the *Barton* Doctrine and other case law.

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors are: Electric Last Mile Solutions, Inc. (8711) and Electric Last Mile, Inc. (0357).

3. Movants have failed to allege any impending deadline, statute of limitations, or other circumstances that could possibly justify compelling the Trustee and the Estates to incur substantial administrative expenses to aid Movants in pursuing their own causes of action against third parties. Further, the relief requested would trample on the rights and duties of the Trustee, who is entitled to a reasonable opportunity to review the Debtors' books and records and to conduct his own investigation. There is no factual or legal basis for the relief requested and the Motion should be denied.

**RELEVANT BACKGROUND**

4. On June 14, 2022 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under chapter 7 of the Bankruptcy Code. Prior to the Petition Date, the Debtors manufactured electric powered delivery vans. The Debtors were a publicly traded company that, at one time, had a market value of approximately $1.4 billion. The Debtors' collapse and bankruptcy filings were well-publicized both before and after the Petition Date.

5. On June 22, 2022, the Debtors filed their schedules of assets and liabilities and their statements of financial affairs ("SOFA"). The SOFA filed by the parent Debtor, Electric Last Mile Solutions, Inc. ("ELMS"), lists at least three regulatory actions, three pending derivative lawsuits, and a pending stockholders lawsuit. *See* D.I. 32, Part 3, Question 7. The Trustee understands that another stockholders lawsuit has been filed post-petition.

6. According to the Motion, post-petition, on or about June 24, 2022, Movant Ashley Morrow sent a written demand for inspection of the books and records of ELMS to its Board of Directors. *See* Motion, Ex. B. That demand letter specifically refers to ELMS's announcement of its plan to file for chapter 7. *See id.* at p. 4 of 113.

7. Also, according to the Motion, post-petition, on or about June 30, 2022, Movant Alex Camarda sent a written demand for inspection of the books and records of ELMS to its Board

2

of Directors. *See* Motion, Ex. C. That demand letter similarly refers to ELMS's plan to file for chapter 7. *See id.* at p. 4 of 38.

8. Each of Movant's demand letters seek numerous documents and records. *See* Motion, Ex. B at p. 5-6 of 113; Motion, Ex. C at 5-6 of 38.

9. On July 8, 2022, counsel for the Movants contacted counsel for the Trustee and provided copies of the demand letters. In subsequent communications, including telephone calls, counsel for the Trustee advised counsel for the Movants, among other things, that these chapter 7 cases are in their early stages, the Trustee is focused on running a sale process for the Debtors' assets, and the Trustee would get back to the Movants on their requests in due course.

10. On August 2, 2022, Movants filed the Motion seeking relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Court to allow Movants to "bring a summary proceeding in Delaware Court of Chancery to enforce their Section 220 demands and seek the production of certain documents related to the Merger." Motion ¶ 31.

## **OBJECTION**

11. Contrary to Movants' assertion, the relief requested in the Motion clearly implicates the automatic stay. Section 362(a) of the Bankruptcy Code provides, in relevant part, that the filing of a voluntary bankruptcy petition "operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [or] . . .
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title [.]

3

11 U.S.C. § 362(a).

12. On its face, section 362(a) prohibits far more than simply "attempting to collect a debtor from, [or] bring[ing] any substantive claims against ELMS." Motion ¶ 6. Indeed, section 362(a) bars Movants from, among other things, commencing an action in the Court of Chancery, employing process, and obtaining possession of property of the Estates, which includes the Debtors' books and records – the very relief Movants seek.

13. Section 362(d) of the Bankruptcy Code authorizes the Court to terminate, annul, modify, or condition the automatic stay for, among other things, "cause." In the Third Circuit, courts apply a "totality of the circumstances" test to determine whether cause exists to grant stay relief. *See In re Irish Bank Res. Corp. Ltd.*, No. 18-1797-LPS, 2019 WL 4740249, at *7 (D. Del. Sept. 27, 2019) (affirming bankruptcy court order denying stay relief).

> To establish cause, the party seeking relief from the stay must show that the balance of hardships from not obtaining relief **tips significantly in its favor.** . . . Courts in this District have applied a hardship balancing test to assess the existence of "cause." . . . The three prongs of the balancing test are (1) whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the stay; (2) whether the hardship to the non-bankrupt party by the maintenance of the stay **considerably outweighs** the hardship to the debtor if the stay is lifted; and (3) whether it is probable that the creditor will prevail on the merits of its case against the debtor.

*Id.* (emphasis added) (internal citations and quotations omitted). Further, "[d]etermining whether 'cause' has been shown requires a fact-specific inquiry, in which the movant must substantiate its case with an evidentiary showing of a factual and legal right to the relief it seeks." *Id.* (internal citation and quotations omitted).

14. Movants have failed to establish any cause to justify granting them stay relief.

### A. Prejudice to the Estates.

15. In their Motion, Movants assert that "the only affirmative obligation that would result from the limited lifting of the automatic stay would be that **the Company** provide copies of

4

a targeted set of documents concerning the Merger to Movants." Motion ¶ 22. At risk of stating the obvious, the "Company" (ELMS) filed for chapter 7 liquidation and no longer has any officers or employees who could respond to document requests on its behalf. The sole representative of the Debtors' Estates is the Trustee. *See* 11 U.S.C. § 704(a). Further, consistent with his statutory duties and authorities, the Trustee retains control over the Estates' assets, including the Debtors' books and records. Thus, Movants are actually seeking relief against the Trustee, not the Company. Furthermore, Movants are not simply asking this Court to order the Trustee to hand over documents which, in and of itself, would be highly objectionable. Movants are in fact asking for stay relief to file a lawsuit in the Delaware Court of Chancery to compel the Trustee to produce documents.

16. Movants' argument completely ignores the very real prejudice that the Estates would suffer. Among other things, if the Motion were granted, the Trustee could be forced to incur substantial administrative expenses in defending the lawsuit in the Court of Chancery. The Trustee could then be forced to incur significant additional administrative expenses in responding to Movants' voluminous document requests. All of this cost and disruption would come at the expense of the Estates and their creditors, but would only serve to benefit Movants, whose interests are subordinate to the creditors.

17. These large and complex chapter 7 cases were commenced barely two months ago. As of the Petition Date, the Debtors owned significant assets, including a manufacturing facility in Indiana, among other things. As is common practice in cases such as these, the Trustee and his professional advisors are currently focusing their efforts on running a sale process for the Debtors' assets. Now is simply not the time for the Trustee and his professionals to be distracted with ad hoc document demands and threatened state court litigation.

18. Movants allege that certain other parties were previously provided with access to the Debtors' books and records.[2] The Trustee has no knowledge of whether this assertion is true or not. And the Trustee has not seen any such production.[3] But even if such a production did exist, it would need to be reviewed before it could be provided to the Movants or to anyone else.

19. Further, the Trustee, as the representative of the Estates, is entitled to a reasonable opportunity to review the Debtors' books and records and to undertake his own investigation.[4] Movants should not be permitted to jump the line ahead of even the Trustee's own investigation.

20. Moreover, there are at least <u>eight</u> other lawsuits or regulatory actions pending against the Debtors or other parties relating to the Debtors' prepetition transactions. If the Court were to permit Movants to proceed with their demands at this time, the Trustee and the Estates would likely face a torrent of requests from other parties, which would further distract from the sale process and interfere with the effective administration of the Estates.

21. In short, the Trustee and the Estates would be manifestly prejudiced if the relief requested in the Motion were granted.

---

[2] Movants have indicated that obtaining a copy of the production they believe the Debtors made to a different party prepetition might satisfy their clients' books and records request, but also reserved their right to seek additional documents. In the Trustee's view, any document production is premature at this stage and is likely to open "pandora's box," leading to additional requests from Movants and from other parties, all at a time when the Trustee has not yet had an opportunity to commence his own investigation and is focused on the sale process.

[3] To be clear, neither the Trustee nor his representatives made any production to any litigation parties post-petition. Any alleged production would have occurred pre-petition.

[4] *See Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 352-53 (1985), observing that a trustee "is directed to investigate the debtor's financial affairs, . . . and is empowered to sue officers, directors, and other insiders to recover, on behalf of the estate, fraudulent or preferential transfers of the debtor's property." The Supreme Court continued, "the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor. . . . In contrast, the powers of the debtor's directors are severely limited. Their role is to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors. . . . Congress contemplated that when a trustee is appointed, he assumes control of the business, and the debtor's directors are completely ousted." (internal citations and quotations omitted).

### B. Lack of Undue Prejudice to Movants.

22. On the other hand, Movants have not shown that they would suffer any undue hardship, let alone that the balance of hardships "tips significantly" in Movants' favor.

23. In their Motion, Movants assert that "[t]o maintain standing, Movants must bring a claim to enforce their Section 220 demands before any action or liquidation in this proceeding eliminates their direct ownership of ELMS stock, as their Section 220 rights are predicated on owning shares at the time such an action is filed." Motion ¶ 5.

24. First, the Trustee is pursuing a sale of the Debtors' <u>assets</u>. The Trustee does not intend to sell, transfer, or dispose of the stock in ELMS. Thus, there is no expectation that a sale of the Debtors' assets would in any way impair any stockholder's equity interest in ELMS.

25. Second, the case law cited by the Movants in their Motion is readily distinguishable. Tellingly, Movants do not cite to a single decision in which a court granted relief from the automatic stay to allow stockholders to commence a Section 220 action against a debtor in bankruptcy, particularly a debtor that opted to liquidate through chapter 7. The Trustee's own legal research has not revealed any such decision.

26. Instead, Movants rely on case law involving whether a court can compel an operating <u>chapter 11</u> debtor to hold a stockholders meeting. *See*, *e.g.*, *Fogel v. U.S. Energy Sys., Inc.,* No. 3271-CC, 2008 WL 151857 (Del. Chancery Ct. Jan. 15, 2008). In *Fogel*, the Chancellor had already directed the debtor to schedule a meeting of stockholders prior to the bankruptcy filing, and the only matter left before the state court post-petition was actually setting a date for that meeting. *Id.* at *1. Here, by contrast, Movants have not commenced any litigation and did not even send their demand letters until after the Petition Date.[5] Further, Movants are not simply

---
[5] At this time, the Trustee takes no position on whether or not Movants' post-petition demand letters may have violated the automatic stay. The Trustee reserves all rights.

7

seeking to pick a date for a meeting of stockholders that a court already ordered prepetition. Rather, Movants are seeking authority to file a lawsuit and to compel the Trustee and the Estates to incur significant time and expense in aid of Movants' third party litigation claims and which will provide no benefit to the Estates. *Fogel* and other similar decisions provide no basis for the relief requested here.

27. Additionally, the fact that Movants are only currently exploring "substantive claims" against third parties – which Movants assert are direct, rather than derivative, in nature – is of no moment. Indeed, if Movants were truly only seeking authority to sue the Debtors' former directors or officers, they would not need stay relief.

28. Instead, Movants are seeking to commence post-petition litigation against the Trustee to compel the production of documents, which would involve substantial time, expense, and distraction to the Estates. The Bankruptcy Code and case law does not permit such relief, especially at this early stage of these complex cases, when the Trustee is focused on maximizing value through a sale of the Debtors' assets.

29. In their Motion, Movants imply that their claims against third parties potentially could be dismissed if they are not permitted to make a pre-filing Section 220 demand. This is pure speculation. In any event, Movants could ask the state court to take judicial notice of the fact that the Debtors filed for chapter 7 bankruptcy and an automatic stay remains in place.

30. More fundamentally, Movants have failed to allege <u>any</u> reason why their request needs to be heard at this time. Movants have not alleged that they are up against any deadline or statute of limitations. Movants have not alleged that their interests cannot be adequately represented in one or more of the numerous other lawsuits that already have been filed. And

Movants have not alleged that they cannot get some or all of the information they are seeking from other parties.

31. Movants cannot show any actual prejudice if their request for stay relief is denied.

### C. Movants' Inability to Succeed on the Merits.

32. The Motion also should be denied because there is no possibility that Movants would succeed on the merits. Movants argue that they are likely to succeed on the merits because, they assert, they satisfy the requirements under Section 220 of the Delaware General Corporations Law. Even if that were true, Movants' argument completely misses the point.

33. Under the *Barton* Doctrine and case law developed thereunder, parties such as Movants are prohibited from bringing a suit against a court-appointed receiver, bankruptcy trustee, trustee's counsel, and certain other parties, without first obtaining leave of the court in which the trustee was appointed. *See, e.g., In re Irish Bank*, 2019 WL 4740249, at *3; *In re Egan Avenatti, LLP*, 637 B.R. 502, 506 (Bankr. C.D. Ca. 2022); *In re Circuit City Stores, Inc.*, 557 B.R. 443, 449 (Bankr. E.D. Va. 2016). "Without such leave, the other forum lacks subject matter jurisdiction over the suit." *Egan Avenatti*, 637 B.R. at 506 (citing *Barton v. Barbour*, 104 U.S. 126, 136-37 (1881)). The *Barton* Doctrine also applies to subpoenas issued by courts other than the district court in which the trustee was appointed. *See Egan Avenatti,* LLP, 637 B.R. 506-07; *Circuit City*, 557 B.R. at 449.

34. In *Egan Avenatti*, a law firm's chapter 7 case was pending in the Central District of California and the chapter 7 trustee was served with two subpoenas issued by the Southern District of New York commanding the trustee to appear at Michael Avenatti's criminal trial in New York. *Egan Avenatti*, 637 B.R. at 503-04. The chapter 7 trustee filed an emergency motion seeking authority to use property of the estate to comply with the subpoenas. *Id.* The bankruptcy court

denied the request. *Id.* Among other things, the bankruptcy court observed that the *Barton* Doctrine was developed to protect the integrity of the bankruptcy proceedings, to allow the bankruptcy court to retain exclusive control over the estate, and to preserve assets and avoid inefficiencies. *Id.* at 505-06. The bankruptcy court further held the *Barton* Doctrine applies to subpoenas issued by other courts, stating, "[a] court issued subpoena targeting a bankruptcy professional or property within the bankruptcy estate without requiring leave of the bankruptcy court at the outset, is simply a waste of time and effort. For several practical reasons, a trustee cannot comply without leave of the bankruptcy court to expend estate funds to comply with a subpoena or to turn over estate property." *Id.* at 508. In particular, compliance with the subpoenas at issue had "already taken up considerable time and legal fees" which is "precisely the harm that the *Barton* Doctrine was created to prevent." *Id.* at 509.

35. In *Circuit City*, a liquidating trustee appointed pursuant to a confirmed chapter 11 plan had participated in certain multidistrict litigation, including producing discovery. *Circuit City*, 557 B.R. at 446-47. After that litigation had concluded, the liquidating trustee was served with a subpoena by a party to the prior litigation seeking precisely the same discovery. *Id.* at 447. But by that point, the trustee no longer had the resources or the personnel to respond. *Id.* at 448. The bankruptcy court granted the trustee's motion to enjoin enforcement of the subpoena. *Id.* at 451. In particular, the bankruptcy court observed that "compliance with the subpoena will directly impact the administration of the Liquidating Trust by causing the Liquidating Trustee to incur significant costs, which will deplete the estate funds that could otherwise be distributed to creditors of the bankruptcy estate." *Id.* at 450. The court continued, "[i]t is incumbent upon the Court to serve as a gatekeeper under the *Barton* Doctrine, protecting the Litigating [sic] Trust from all

outside legal proceedings that attempt to direct the activities of the Liquidating Trustee to the detriment of the bankruptcy estate." *Id.* at 450.

36. The reasoning of *Egan Avenatti* and *Circuit City* applies equally here.

37. Movants are seeking permission to commence an outside legal proceeding that would direct the activities of the Trustee to the detriment of the Estates and their creditors. The Trustee believes that complying with Movants' demands would create a substantial burden to the Estates both in terms of time and attention and also in terms of administrative expenses. The Trustee has no authority to incur post-petition administrative expenses in responding to Movants' document demands and the Trustee submits that any such expenses cannot be justified under the Bankruptcy Code because there is no conceivable benefit to the Estates and complying with Movants' demands would only benefit them in pursuing their own third party litigation.

38. The Trustee respectfully submits that this Court should exercise its authority as gatekeeper under the *Barton* Doctrine and prohibit Movants from filing a lawsuit in the Court of Chancery against the Trustee and the Debtors or from demanding documents from them.

39. Finally, although Movants did not seek relief under Bankruptcy Rule 2004, such relief would not be available to them in any event. As multiple courts have recognized, stockholders and other parties that are pursuing their own causes of action are not entitled to discovery under Rule 2004, particularly where, as here, the Trustee has not yet had a reasonable opportunity to review the Debtors' books and records and to conduct his own investigation on behalf of the Estates. *See, e.g., In re Cambridge Analytica LLC*, 600 B.R. 750, 753 (Bankr. S.D.N.Y. 2019) (denying stockholders' request for Rule 2004 discovery in aid of their derivative action, where the costs of complying with such discovery demands "would benefit only the outside litigation at the expense of the bankruptcy estate and its creditors."); *In re MF Global Holdings,*

*Ltd.*, 465 B.R. 736, 743-44 (Bankr. S.D.N.Y. 2012) (denying a commodity customer's Rule 2004 motion filed while the chapter 7 trustee was conducting their own investigation, as unnecessary and a hindrance to the trustee's investigation).

40. In sum, the prejudice to the Estates far outweighs any potential prejudice to Movants who, in any event, are not entitled to the relief requested as a matter of law. Accordingly, the Motion should be denied.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court deny the Motion in its entirety and grant the Trustee such other relief as is good and proper.

| | |
|---|---|
| Dated: August 17, 2022 | ARCHER & GREINER, P.C. |
| | |
| | */s/ Bryan J. Hall* |
| | Alan M. Root (No. 5427) |
| | Bryan J. Hall (No. 6285) |
| | 300 Delaware Avenue, Suite 1100 |
| | Wilmington, DE 19801 |
| | Telephone: 302-777-4350 |
| | Facsimile: 302-777-4352 |
| | Email: aroot@archerlaw.com |
| | bjhall@archerlaw.com |
| | |
| | *Counsel for the Chapter 7 Trustee* |