# EXHIBIT A

## Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Electric Last Mile Solutions, Inc., *et al.*, [1] | Case No. 22-10537 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: Dkt. No. \_\_\_\_** |

**ORDER (A) ESTABLISHING BIDDING PROCEDURES RELATING TO
THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B)
ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; (C) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE
AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS,
AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF;
AND (D) GRANTING RELATED RELIEF**

Upon the Motion (the "Motion")[2] of David W. Carickhoff, the chapter 7 trustee (the

"Trustee") of the bankruptcy estates (collectively, the "Estates") of the above-captioned debtors

(collectively, the "Debtors"), pursuant to sections 105(a), 363 and 365 of title 11 of the United

States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules") for entry of an order, *inter alia*, (i) establishing and approving

Bidding Procedures; (ii) approving certain notice procedures with respect to the Sale; (iii)

establishing procedures for the transfer, assumption and assignment of contracts and leases; (iv)

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors are: Electric Last Mile Solutions, Inc. (8711) and Electric Last Mile, Inc. (0357)

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion or the Stalking Horse APA (as applicable).

approving the Breakup Fee; (v) scheduling a hearing to consider the Sale, and (vi) granting related relief; and this Court having found that it has jurisdiction pursuant over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this matter constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and no other or further notice hereof being necessary or required; and the Court having found that the Trustee has articulated good and sufficient reasons in support of the relief requested in the Motion regarding the sale process, including without limitation, (i) approval of the Bidding Procedures, (ii) approval and authorization to serve the Sale Notice and the Cure Notice and (iii) approval of the Breakup Fee; and it appearing to the Court that based upon the representations contained in the Motion, the issuance of this Order is in the best interest of the Estates and creditors; and after due deliberation and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1       The Bidding Procedures Relief set forth in the Motion is GRANTED.

2       All objections to the Bidding Procedures Relief set forth in the Motion (and all reservations of rights included therein) are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

## **Approval of Bidding Procedures**

3       The Bidding Procedures attached hereto as **Exhibit 1** are approved in their entirety. The process for soliciting bids for the Acquired Assets as set forth in the Bidding Procedures (i) is designed to maximize the value to be achieved for the Acquired Assets under the circumstances; (ii) will ensure a competitive and efficient bidding process; and (iii) is fair and reasonable under the circumstances. The Bidding Procedures shall govern the submission, receipt and analysis of

all bids relating to the Sale and any party desiring to submit a Bid shall do so strictly in accordance with the terms of the Bidding Procedures and this Order.

4       Within two (2) business days following the entry of this Order or as soon as reasonably practicable thereafter (the "Mailing Date"), the Trustee shall serve a sale notice in the form annexed hereto as **Exhibit 2** (the "Sale Notice"), this Order and the Bidding Procedures by e-mail, first-class mail, postage prepaid, or, for those parties who have consented to receive notice by the Electronic Case Files ("ECF") system, by ECF, upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets; (ii) all entities known to have asserted any lien in or upon any of the Acquired Assets; (iii) the Office of the United States Trustee for the District of Delaware; (iv) the Stalking Horse Bidder; and (v) all parties who have requested notice pursuant to Federal Rules of Bankruptcy Procedure Rule 2002.

5       In addition, on the Mailing Date, the Trustee shall serve the Sale Notice only by electronic mail, first-class mail, postage prepaid or, for those parties who have consented to receive notice by the ECF system, by ECF, upon (i) the United States Attorney's Office for the District of Delaware; (ii) the Internal Revenue Service; (iii) the Environmental Protection Agency; (iv) all parties who have filed a proof of claim by the Mailing Date; and (v) all parties listed on the Debtors' creditor matrix [Dkt. No. 2].

6       Notice as set forth in paragraphs four (4) and five (5) hereof is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale.

**Sale Hearing**[3]

7        The hearing to approve the Sale of the Acquired Assets will be held on October 12, 2022 at 2:00 p.m.  (Eastern), such hearing may be adjourned without further notice other than an announcement in open Court at the Sale Hearing or filing of a notice of adjournment of such Sale Hearing in these cases.

8        The deadline to object to the Sale shall be October 5, 2022 at 4:00 p.m. (Eastern). Objections to the Sale, if any, shall be in writing, filed with the Court and served upon (a) the Trustee, David W. Carickhoff (dcarickhoff@archerlaw.com); (b) counsel for the Trustee, Attn: Alan M. Root, Esq. (aroot@archerlaw.com); and (c) the Office of the United States Trustee, Attn: Linda J. Casey (linda.casey@usdoj.com), so as to be actually received on or before the Sale Objection Deadline.  Service via email is acceptable.

9        The failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order and/or consummation of the Sale, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including the transfer of the Debtors' right, title and interest in, to and under the Acquired Assets, free and clear of any and all Liens in accordance with a definitive agreement for any Sale.

**Assumption and Assignment Procedures**

10        No later than 30 days after the Closing Date (as defined in the Stalking Horse APA), Trustee shall file with the Court and serve on each applicable counterparty a notice substantially in the form annexed hereto Order as **Exhibit 3** (the "Cure Notice") identifying each contract or lease that may be transferred, assumed and assigned to the Successful Bidder.   The Trustee may

---

[3] The Sale Hearing Date and Sale related deadlines set forth herein and in the Bidding Procedures are summarized in the chart attached hereto as Exhibit A.  All such deadlines are approved hereby.

file more than one Cure Notice and, by listing a contract or lease on the Cure Notice, the Trustee has not committed that such contract or lease will in fact be transferred, assumed and assigned to the Successful Bidder.

11      The Cure Notice shall state (i) the cure amount that the Trustee believes is necessary to assume and assign each contract or lease listed thereon pursuant to Bankruptcy Code section 365 (the "Cure Amount"), (ii) notify each counterparty listed thereon that such party's contract or lease may be transferred assumed and assigned to the Successful Bidder, and (iii) state the deadlines by which the non-Debtor counterparty must file an objection to the Cure Amount or to the transfer, assumption and to the assumption and assignment of such contract or lease to the Successful Bidder.

12      The form Cure Notice attached hereto as **Exhibit 3** is reasonably calculated to provide counterparties to the Assumed Contracts with proper notice of the intended transfer, assumption and assignment of the Assumed Contracts, any Cure Amount relating thereto and procedures for objecting to the transfer, assumption or assignment of the Assumed Contracts. Accordingly, the form of Cure Notice attached hereto as **Exhibit 3** is hereby approved.

13      Any objection to the Cure Amount or to the proposed assumption or assignment of, any contract or lease listed on the Cure Notice on any grounds, including on the grounds of lack of adequate assurance (collectively, the "Assignment Objections"), must be filed with the Court and served on the Trustee and his counsel within fourteen (14) days after the filing of the Cure Notice (the "Cure/Assignment Objection Deadline").  Any Assignment Objections must (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (iii) state with specificity the legal and factual basis for such objection; and (iv) if such objection

relates to the Cure Amount, state with specificity what cure the counterparty believes is required with appropriate documentation in support thereof.

14      Any counterparty to an Assumed Contract who does not timely file an Assignment Objection by the deadlines set forth herein shall be deemed to have consented to the transfer, assumption and assignment of its Assigned Contract to the Successful Bidder pursuant to section 363 or 365 of the Bankruptcy Code, as applicable, and shall be forever barred and estopped from objecting to such transfer, assumption assignment on all grounds, including on the grounds lack of adequate assurance.

15      Any Assignment Objection(s) not resolved between the parties shall be heard at the Sale Hearing or such other date set for hearing as fixed by the Court.

## **Breakup Fee**

16      The Trustee has demonstrated compelling business justifications for the Breakup Fee. Among other things, the Breakup Fee is reasonable and appropriate in light of the size and nature of the proposed Sale to the Stalking Horse Bidder and the efforts that have been and will be expended by the Stalking Horse Bidder. Without further Order of this Court, the Trustee is authorized to pay the Breakup Fee to the Stalking Horse Bidder, solely to the extent that the Breakup Fee becomes payable under the express terms of the Stalking Horse APA. The Breakup Fee shall be payable solely from the proceeds of a closing on a Competing Transaction for the Acquired Assets. The Stalking Horse Bidder is not seeking and shall not be entitled to an expense reimbursement or any other similar bidder protections.

**<u>Miscellaneous</u>**

17      The Trustee is authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

18      To the extent there is any inconsistency between the terms of this Order and the Bidding Procedures, the terms of this Order shall control.

19      Notwithstanding any applicability of Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

20      This Court retains jurisdiction with respect to all matters, claims, rights or disputes arising from, based upon or related to this Order.

# EXHIBIT A

## (Chart of Sale Related Deadlines)

| Deadline | Date |
|---|---|
| Bid Deadline | October 3, 2022 at 5:00 p.m. (ET) |
| Auction[4] | October 7, 2022 at 10:00 a.m. (ET) |
| Sale Objections | October 5, 2022 at 4:00 p.m. (ET) |
| Cure and Assignment Objections | 4:00 p.m. (ET) fourteen (14) days after filing of Cure Notice |
| Sale Hearing | October 12, 2022 at 2:00 p.m. (ET) |
| Closing | Within 15 days after entry of Sale Order. |

225245189v1

---

[4] An auction will only be held if there is more than one Qualified Bidder.

## Exhibit 1

Bidding Procedures

## BIDDING PROCEDURES

By Motion dated September ___, 2022 (the "Sale Motion"),[1] David W. Carickhoff (the "Trustee"), as the chapter 7 trustee of the bankruptcy estates (the "Estates") of Electric Last Mile Solutions, Inc. and Electric Last Mile, Inc. (collectively, the "Debtors"), sought approval of, among other things, the procedures through which he will determine the highest or otherwise best offer to sell substantially all of the Debtors' assets (collectively, the "Assets") free and clear of liens, claims, encumbrances and other interests pursuant to sections 363 of the Bankruptcy Code to the party that submits, in the Trustee's business judgment, the highest or otherwise best offers for the Assets (a "Sale Transaction").

The Debtors each filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") on June 14, 2022, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

As referenced in the Sale Motion, the Trustee and Mullen Automotive Inc. (the "Stalking Horse Bidder") have entered into an asset purchase agreement (collectively with all exhibits and schedules, the "Stalking Horse APA"). The Stalking Horse APA proposes a transaction which would include (i) the purchase all of the Debtors' right, title and interests in the Assets and (ii) a transfer, assumption and assignment of the Debtors' rights and obligations under certain contracts and leases (the "Assigned Contracts") to the Stalking Horse Bidder under sections 105, 363 and 365 of the Bankruptcy Code (the "Stalking Horse Bid"). A copy of the Stalking Horse APA is attached to the Sale Motion.

On _____, 2022, the Bankruptcy Court entered an order (the "Bidding Procedures Order") which, among other things, authorized the Trustee to determine the highest or otherwise best offer for the Assets through the process and procedures set forth below (these "Bidding Procedures"). **Notwithstanding that the Stalking Horse Bid contemplates a sale of substantially all of the Debtors' assets, bidders may bid on all of the Assets or only specific lots of Assets.**

## Access to Diligence Materials

To receive access to due diligence (the "Diligence Materials"), a party must submit to the Trustee an executed non-disclosure agreement (an "NDA") in a form and substance acceptable to the Trustee.[2] Parties interested in receiving access to the Diligence Materials should contact the Trustee' investment banker, SSG Advisors, LLC, Attn: J. Scott Victor (jsvictor@ssgca.com); Neil Gupta (ngupta@ssgca.com); or Matthew Arden (marden@ssgca.com).

A party who qualifies for access to Diligence Materials shall be an "Interested Bidder." The Trustee will afford any Interested Bidder the time and opportunity to conduct reasonable due

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

[2] To be clear, execution of an NDA is only required to receive access to diligence material. The failure to execute an NDA will not necessarily preclude an interested bidder from submitting a bid or becoming a Qualified Bidder if such bidder determines to submit a bid without access to diligence material.

diligence under the time constraints provided herein; provided, however, that the Trustee shall not furnish any due diligence information after the Bid Deadline (as defined below). The Trustee reserves the right to withhold any Diligence Materials that the Trustee, in consultation with his advisors, determines are business-sensitive or otherwise not appropriate for disclosure to an Interested Bidder. Neither the Trustee nor his representatives shall be obligated to furnish information of any kind whatsoever to any person. Bidders shall conduct their own due diligence and shall not have any claims or causes of action against the Trustee, the Estates or the Trustee's representatives, professionals, advisors, agents or independent contractors for the accuracy or completeness of any information provided to them by the Trustee or his representatives, professionals, advisors, agents or independent contractors.

Each Interested Bidder and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Trustee or his professionals or advisors regarding such Interested Bidder or Qualified Bidder, as applicable, and its contemplated transaction for the Assets. Failure by an Interested Bidder or Qualified Bidders to comply with requests for additional information and due diligence access may be a basis for the Trustee to determine that any Bid (as defined below) submitted by such Interested Bidder or Qualified Bidder is not a Qualified Bid (as defined below). Bidders (as defined below) must complete all due diligence by no later than the Bid Deadline (as defined below).

## Assets to Be Sold Free and Clear

Except as otherwise provided in the asset purchase agreement submitted by a Successful Bidder (as defined below) (including any exhibits or schedules thereto), the Trustee will seek to sell all of the Debtors' right, title and interest in and to the Assets subject thereto free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Liens") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Liens applied against the Assets.

## Bidding Process

Subject to the provisions set forth below, the Trustee and his advisors shall (i) determine whether any person is a Qualified Bidder (as defined below), (ii) coordinate the efforts of Interested Bidders in conducting their due diligence investigations, (iii) receive offers from Bidders (as defined below), and (iv) negotiate any offers made to purchase the Assets.

### Key Dates For Potential Competing Bidders

**Bid Deadline:**                    **October 3, 2022 at 5:00 p.m. (ET)**

**Auction:**[3]                    **October 7, 2022 at 10:00 a.m. (ET)**

---

[3] An auction will only be held if there is one or more Qualified Bidder, other than the Stalking Horse Bidder.

**Sale Hearing:**                    **October 12, 2022 at 2:00 p.m. (ET)**

*Bid Submission Process*

To be eligible to be considered by the Trustee in the bid submission process, each offer, solicitation or proposal (each, a <u>Bid</u>"), and each party submitting such a Bid (each, a "<u>Bidder</u>"), must be determined by the Trustee, in consultation with his advisors, to satisfy each of the following conditions:

(a)    <u>Good Faith Deposit</u>:  A Bid must be accompanied by a deposit in the amount of ten percent (10%) of the purchase price contained in the Asset Purchase Agreement (as defined below) to a bank account to be identified and established by the Trustee (the "<u>Good Faith Deposit</u>").    Each submitted Asset Purchase Agreement (as defined below) must provide a representation that the Good Faith Deposit shall be subject to all of the terms of these Bidding Procedures.

(b)    <u>Executed Agreement</u>:  A Bid must be based on the Stalking Horse APA[4] and must include binding, executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Sale Transaction (an "<u>Asset Purchase Agreement</u>").  A Bid also must include a copy of a redline (a "<u>Redline APA</u>") reflecting all of the changes to the Stalking Horse APA (including all exhibits and schedules thereto) requested by the Bidder, including those changes related to purchase price and to remove any provisions that apply only to the Stalking Horse Bidder.

(c)    <u>Assets to be Purchased</u>:  A Bid must identify with particularity any and all of the Assets that the Bidder proposes to purchase.  In the case of bid for less than all of the Assets, the Asset Purchase Agreement must allocate the purchase price per lot of Assets identified.

(d)    <u>Same or Better Terms</u>: Any Bid(s) for the Assets must be on terms that the Trustee, in his business judgment, determines are the same or better for the Estates than the terms of the Stalking Horse APA.  In particular, a Bid (or in the case of partial bids, the aggregate of all such partial bids received) must have a value that, in the Trustee's reasonable business judgment, is higher or otherwise better than (i) the Purchase Price (as defined in the Stalking Horse APA), (ii) the Assumed Liabilities (as defined in the Stalking Horse APA) and (iii) the Break-Up Fee ($1,650,000). **For the avoidance of doubt, for any Bid for all of the Assets (other than the Stalking Horse Bid) to constitute a Qualified Bid, it must provide for, at a minimum:**

(i)    **Consideration of approximately $93,650,000 consisting of (a) cash in the amount of $56,650,000 ($55 million, plus the Break-**

---

[4] To obtain a Word copy of the Stalking Horse APA, contact counsel to the Trustee, Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1100, Wilmington, DE 19801, Attn: Alan Root (aroot@archerlaw.com).

> **Up Fee of $1.65 million) and (b) payoff to the Estates of the Land Contract balance (approximately $37 million) or assumption of the Land Contract on the same terms set forth in in the Stalking Horse APA; plus**
>
> (ii)    **payment to the Estates of all Cure Amounts.**

(e)    <u>Designation of Contracts and Leases</u>:  A Bid must identify with particularity each and every contract and lease with respect to which the Bidder seeks assignment from the Trustee.

(f)    <u>Designation of Assumed Liabilities</u>:  A Bid must identify with particularity any and all liabilities that the Bidder proposes to assume.

(g)    <u>Corporate Authority</u>:  A Bid must include written evidence reasonably acceptable to the Trustee demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction; <u>provided</u> <u>that</u>, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Trustee of the approval of the Sale Transaction by the equity holder(s) of such Bidder.

(h)    <u>Disclosure of Identity of Bidder</u>:  A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets, including any equity holders, in the case of a Bidder which is an entity specially formed for the purpose of effectuating the Sale Transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid.  A Bid must also fully disclose any connections or agreements with the Debtors, or any other known, potential or prospective Bidder or Qualified Bidder, and/or any current or former officer, director or equity holder of the Debtors.

(i)    <u>Proof of Financial Ability to Perform</u>:  A Bid must include written evidence that demonstrates, as determined by the Trustee in consultation with his advisors, that the Bidder has the necessary financial ability to close the Sale Transaction and provide adequate assurance of future performance under all contracts and leases to be assumed and assigned in the Sale Transaction.

(j)    <u>Contact Information and Affiliates</u>:  The Bid must provide the identity and contact information for the Bidder and full disclosure of any affiliates of the Bidder.

(k)    <u>Regulatory and Third-Party Approvals</u>:  A Bid must set forth each regulatory and third-party approval, if any, required for the Bidder to consummate the Sale Transaction and the time period within which the Bidder expects to receive such regulatory and third-party approvals.  Additionally, a Bid must include evidence that the Trustee concludes, in consultation with his advisors, demonstrates that the Bidder likely has the ability to obtain all regulatory and third-party approvals necessary to consummate the Sale Transaction.

(l)     <u>No Contingencies</u>:  A Bid may not (i) contain representations and warranties, covenants and termination rights which the Trustee, in his business judgment, determines to be more onerous than those set forth in the Stalking Horse APA (when considering all such provisions as a whole) and (ii) be conditioned on obtaining financing, any internal approvals or credit committee approvals, or on the outcome or review of unperformed due diligence.

(m)    <u>No Collusion</u>:  Each Bidder submitting a Bid must confirm in writing that it has not engaged in any collusion with respect to the bidding or the Sale.

(n)     <u>Irrevocable</u>:  A Bid must be irrevocable until five (5) business days after the Sale Hearing, <u>provided</u> <u>that</u> if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

(o)     <u>Compliance with Diligence Requests</u>:  A Bidder submitting a Bid must have complied with reasonable requests for additional information and due diligence access from the Trustee to the satisfaction of the Trustee.

(p)     <u>NDA</u>:  To the extent not already executed, the Bid must include an executed NDA in form and substance acceptable to the Trustee.

(q)     <u>Stalking Horse Protections; No Break-Up Fees or Termination Fees</u>:   Other than the Break-Up Fee contemplated by the Stalking Horse Bid, the Bid must not entitle the Bidder to any stalking horse protections, including, without limitation, any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement and, by submitting the Bid, the Bidder further waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in the Auction.

(r)     <u>Submission of Bids</u>:  The following parties must receive a Bid in writing (in both PDF and Word format), on or before the Bid Deadline: (1) the Trustee, David W. Carickhoff (dcarickhoff@archerlaw.com); (2) bankruptcy counsel to the Trustee, Archer & Greiner, P.C., Attn: Alan Root (aroot@archerlaw.com) and (3) investment banker to the Trustee, SSG Advisors, LLC, Attn: J. Scott Victor (jsvictor@ssgca.com); Neil Gupta (ngupta@ssgca.com); and Matthew Arden (marden@ssgca.com).

**Bids must be submitted on or before October 3, 2022 at 5:00 p.m. (ET) ("<u>Bid</u> <u>Deadline</u>").** A Bid received from a Bidder on or before the Bid Deadline that meets the requirements of paragraphs (a) through (r) above, as determined by the Trustee after consultation with his advisors shall constitute a "<u>Qualified Bid</u>," and such Bidder shall constitute a "<u>Qualified</u> <u>Bidder</u>"; <u>provided</u> that if the Trustee receives a Bid prior to the Bid Deadline that is not a Qualified Bid the Trustee may provide the Bidder with the opportunity to remedy any deficiencies prior to the Bid Deadline (or, if applicable, before the Auction); <u>provided</u>, <u>further</u>, that, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Trustee to the satisfaction of the Trustee, the Trustee may, after consulting with his

advisors, disqualify any Qualified Bidder and Qualified Bid, in the Trustee's discretion, and such Qualified Bidder shall not be entitled to attend or participate in the Auction. Upon determination that a Bid constitutes a Qualified Bid, the Trustee shall, within one (1) business day of such determination, provide the Stalking Horse Bidder and any other Qualified Bidder with a copy of such Qualified Bid. The Trustee shall use his best efforts to notify promptly any Bidder whether its Bid is considered a Qualified Bid.

For the avoidance of doubt, the Stalking Horse Bid is a Qualified Bid under these Bid Procedures.

Each Qualified Bidder (including the Stalking Horse Bidder), by submitting a Bid, shall be deemed to acknowledge and agree that it is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party, including the Trustee and his agents and representatives (other than as may be set forth in a definitive agreement executed by the Trustee), regarding the Debtors, the Assets, these Bidding Procedures or any information provided in connection therewith.

## **The Auction**

If at least one Qualified Bid other than that of the Stalking Horse Bid is received by the Bid Deadline, the Trustee will hold an auction to determine the highest or otherwise best Qualified Bid (the "<u>Auction</u>") on **October 7, 2022 at 10:00 a.m. (ET)**. At the Trustee's discretion, the Auction will be held either (a) in person at the offices of Archer & Greiner, P.C. (300 Delaware Avenue, Suite 1100, Wilmington, DE 19801) or (b) or remotely by telephone or Zoom (or similar program). Bidding at the Auction shall be transcribed or video recorded.

Attendance at the Auction shall be limited to the Trustee, the Stalking Horse Bidder, the Office of the United States Trustee, and any other Qualified Bidder, any of their respective representatives and counsel, and any creditor of the Debtors that has notified the Trustee's counsel of such creditor's intention to observe the Auction at least three (3) business days prior to the commencement of the Auction. The Stalking Horse Bidder and all other Qualified Bidders at the Auction shall be deemed to have (a) consented to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Trustee, the Estates, the Bidding Procedures, the Stalking Horse APA, any Asset Purchase Agreement submitted by a Qualified Bidder, the Assets, the Auction, or the construction of any Qualified Bid or related documents and (b) waived any right to a jury trial in connection with any disputes relating to the Trustee, the Estates, the Bidding Procedures, the Stalking Horse APA, any Asset Purchase Agreement submitted by a Qualified Bidder, the Assets, the Auction, or the construction of any Qualified Bid or related documents.

Each Qualified Bidder participating at the Auction must confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

At the Auction in accordance with the procedures set forth below, participants will be permitted to increase their bids and improve their terms. Bidding for the Assets will start at the purchase price and terms proposed in the Baseline Bid (as defined below).

The Baseline Bid.  The Trustee, after consultation with his advisors, will select the Qualified Bid that he determines to be the highest and/or best Qualified Bid (the "Baseline Bid") to serve as the starting point at the Auction.  Selection of the Baseline Bid shall take into account all relevant considerations, including the financial condition of the applicable Qualified Bidder, the assumption of any liabilities and payment of Cure Amounts by the Qualified Bidder under the applicable Asset Purchase Agreement, and the certainty of closing.

Overbids.  An "Overbid" is any bid made at the Auction, in accordance with the requirements set forth herein, subsequent to the Trustee's announcement of the Baseline Bid.  All bidding at the Auction is subject to the following terms:

(a)    Initial Overbid.  The initial Overbid, if any, shall provide for total consideration with a value that exceeds the value of the consideration in the Baseline Bid by an incremental amount that is not less than the sum of $1,000,000.

(b)    Successive Overbids.  Each successive Overbid after the initial Overbid, if any, shall exceed the then-existing overbid by an incremental amount of not less than $1,000,000.

(c)    Non-Cash Consideration. Any Overbid may include both cash and non-cash consideration, provided that the value of any such non-cash consideration shall be determined by the Trustee in his business judgment, in consultation with his advisors.

(d)    Description of Consideration and Changes to Asset Purchase Agreement. Qualified Bidders, in connection with any Overbid, must describe all cash and non-cash consideration as well all other changes, if any, requested to Asset Purchase Agreement the Qualified Bidder previously submitted with its Bid.

(e)    Overbids Irrevocable.  Any Overbid shall be irrevocable and shall remain open and binding upon the Qualified Bidder in accordance with the terms of these Bidding Procedures.

(f)    Proof of Financial Ability to Perform.  At the Trustee's discretion, and to the extent not previously provided (which shall be determined by the Trustee in consultation with his advisors), a Qualified Bidder submitting an Overbid, must submit written evidence in a form acceptable to the Trustee, demonstrating such Qualified Bidder's ability to consummate the Sale Transaction proposed by such Overbid.

(g)    Adjustment of Overbid Increments.  The Trustee reserves the right to adjust the Overbid increments set forth herein his business judgment after consultation with his advisors.

The Trustee, after consultation with his advisors may at any time adopt rules for the Auction that the Trustee reasonably determines to be appropriate to promote the goals of the sale process, provided that such rules are disclosed to each Qualified Bidder participating in the Auction.

If by the Bid Deadline, the Trustee does not receive any Qualified Bids other than the Stalking Horse Bid: (a) the Trustee will not hold an Auction; (b) the Stalking Horse Bid will be the Successful Bid (as defined below) and the Stalking Horse Bidder will be named the Successful Bidder (as defined below); and (c) the Trustee will proceed to request at the Sale Hearing (as defined below) that the Bankruptcy Court enter an order approving the Sale Transaction in accordance with the Stalking Horse APA.

## Selection of a Successful Bid and a Backup Bid

At the conclusion of the Auction, the Trustee, after consultation with his advisors, will determine the highest or otherwise best Qualified Bid for the Assets (the "Successful Bid" and, the Bidder submitting such Successful Bid, the "Successful Bidder") and the next highest or next best Qualified Bid (the "Backup Bidder"). This determination shall take into account any factors the Trustee reasonably deems relevant to the value of the Qualified Bid to the Estates and may include, but are not limited to, the following: (a) the amount of the consideration and the resulting recovery to creditors; (b) the number, type and nature of any changes to the Stalking Horse APA requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Asets and the cost to the Estates of such modifications or delay; (d) the total consideration to be received by the Estates, including the assumption of any liabilities of the Estates and payment of Cure Amounts; (e) the Bidder's ability to close a transaction and the timing thereof; and (f) the net benefit to the Estates (collectively, the "Bid Assessment Criteria").

The Backup Bidder shall be required to keep its Bid (the "Backup Bid") open and irrevocable until the earlier of: (i) the closing of the transaction with the Successful Bidder; or (ii) 30 days after the Sale Hearing.

As soon as reasonably practicable after the Auction, the Trustee shall file with the Bankruptcy Court a notice of the Successful Bid and Successful Bidder and, once available, such Successful Bidder's Asset Purchase Agreement.

Following the Sale Hearing, if the Successful Bidder fails to consummate the purchase of the Assets, the Trustee may deem the Backup Bidder to have the new prevailing bid, and the Trustee will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with the Backup Bidder. In such case of a failure to consummate the purchase of the Assets on the part of such Successful Bidder (including any Backup Bidder designated as a Successful Bidder), the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Trustee for the benefit of the Estates. In addition, except as set forth in the Successful Bidder's Asset Purchase Agreement, the Trustee, on behalf of the Estates, specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

## Sale Is As Is/Where Is

Except as otherwise set forth in the Asset Purchase Agreement of the Successful Bidder or an order of the Bankruptcy Court approving the Sale Transaction, the sale of the Assets pursuant to the Bidding Procedures shall be made free and clear of liens, claims, and other interests pursuant

to section 363 of the Bankruptcy Code and in all other respects on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Trustee, his agents, advisors or representatives or the Estates.  By submitting a Bid, each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or as set forth in the Asset Purchase Agreement of a Successful Bidder or the Sale Order.

## Sale Hearing

The Successful Bid and the Backup Bid will be subject to approval by the Bankruptcy Court.  A hearing to approve the Successful Bid and any Backup Bid (the "Sale Hearing") shall take place on **October 12, 2022 at 2:00 p.m. (ET)**.  The Sale Hearing may be adjourned by the Trustee from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of Debtors' bankruptcy cases.

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more segregated accounts by the Trustee.  The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing.  The Good Faith Deposit of any Backup Bidder shall be returned to such Backup Bidder the earlier of:  (i) five (5) business days after the closing of the transaction with the Successful Bidder; or (ii) 45 days after the Sale Hearing.  If the Successful Bidder timely closes the Sale Transaction, its Good Faith Deposit shall be credited towards the purchase price, in accordance with the Successful Bidder's Asset Purchase Agreement.

## Reservation of Rights of the Trustee

Except as otherwise provided in these Bidding Procedures or the Bidding Procedures Order, the Trustee reserves the right as he may reasonably determine to be in the best interest of the Estates, to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (d) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (3) contrary to the best interests of the Estates; (e)  waive non-compliance with any of the terms and conditions set forth herein as he determines to be in the best interests of the Estates, creditors, and other parties in interest; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; (h) continue or cancel the Sale Hearing in open court, or by filing a notice on the docket of the Debtors' bankruptcy cases, without further notice to creditors or other parties in interest; and (i)  implement additional procedural rules that the Trustee determines, in his business judgment, will better promote the goals of the bidding

process and discharge the Trustee's fiduciary duties; <u>provided</u>, <u>however</u>, that any modification or additions to the Bidding Procedures shall be disclosed to each Qualified Bidder.

225621940v1

## **Exhibit 2**

Sale Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| Electric Last Mile Solutions, Inc., *et al.*, [1] | Case No. 22-10537 (MFW)<br>(Jointly Administered) |
| Debtors. | |

**NOTICE OF SALE HEARING**

    **PLEASE TAKE NOTICE THAT** on September __, 2022, David W. Carickhoff, the chapter 7 trustee (the "Trustee") of the bankruptcy estates of the above-captioned debtors (collectively, the "Debtors"), filed the *Amended Motion of David W. Carickhoff, Chapter 7 Trustee, for Entry of Orders (i)(a) Establishing Bidding Procedures Relating to the Sale of Substantially All of the Debtors' Assets; (b) Approving a Breakup Fee; (c) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (d) Scheduling a Hearing to Consider the Proposed Sale and Assumption and Assignment of Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, and Approving the Form and Manner of Notice Thereof and (ii)(a) Approving the Proposed Sale; (b) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (c) Granting Related Relief* (the "Sale Motion").[2]

    **PLEASE TAKE FURTHER NOTICE** that, by the Sale Motion, the Trustee seeks, among other things, to sell and assign substantially all of the Debtors' assets (the "Assets") to the successful purchaser free and clear of liens, claims, encumbrances and other interests pursuant to sections 363 of the Bankruptcy Code.

    **PLEASE TAKE FURTHER NOTICE** that, as referenced in the Sale Motion, the Trustee and Mullen Automotive Inc. (the "Stalking Horse Bidder") have entered into an asset purchase agreement (collectively with all exhibits and schedules, the "Stalking Horse APA"). The Stalking Horse APA proposes a transaction which would include (i) the purchase all of the Debtors' right, title and interests in the Assets and (ii) a transfer, assumption and assignment of the Debtors' rights and obligations under certain contracts and leases (the "Assigned Contracts") to the Stalking Horse Bidder under sections 105, 363 and 365 of the Bankruptcy Code (the "Stalking Horse Bid"). A copy of the Stalking Horse APA is attached to the Sale Motion.

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors are: Electric Last Mile Solutions, Inc. (8711) and Electric Last Mile, Inc. (0357)

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Sale Motion or the Bidding Procedures (defined herein).

**PLEASE TAKE FURTHER NOTICE** that on _____, 2022, the Bankruptcy Court entered an Order (the "Bidding Procedures Order") approving the Bidding Procedures as set forth in the Sale Motion, which set the key dates and times related to the sale of the Assets.  A copy of the Bidding Procedures Order and the Bidding Procedures can be obtained by contacting Archer & Greiner, P.C., Attn: Alan M. Root, Esq. (aroot@archerlaw.com), 300 Delaware Avenue, Suite 1100, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, Bids for the Assets shall be accepted until _____, **2022 at 5:00 p.m. (ET)** (the "Bid Deadline").  A Bid received from a Bidder on or before the Bid Deadline that meets the requirements of the Bidding Procedures shall constitute a "Qualified Bid"

**PLEASE TAKE FURTHER NOTICE** that if more than one Qualified Bid is received by the  Bid Deadline, the Trustee will hold an auction on _____ **2022 at 10:00 a.m. (ET)**.  At the Trustee's discretion, the auction will be held either (a) in person at the offices of Archer & Greiner, P.C. (300 Delaware Avenue, Suite 1100, Wilmington, DE 19801) or (b) or remotely by telephone or Zoom (or similar program).

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Assets to the Successful Bidder (the "Sale Hearing") before the Honorable Mary F. Walrath, via Zoom on _____, **2022 at 2:00 p.m. (ET)**, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by filing a notice on the Court's docket for these chapter 7 cases.

**PLEASE TAKE FURTHER NOTICE** that objections to the Sale, if any, must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the District of Delaware; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Clerk of the Court at 824 Market Street, 3rd Floor, Wilmington, DE 19801 and served so as to be received no later than _____, **2022 at 4:00 p.m. (ET)** by (1) the Trustee, Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1100, Wilmington, DE 19801, Attn: David W. Carickhoff (dcarickhoff@archerlaw.com); and (2) counsel to the Trustee, Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1100, Wilmington, DE 19801, Attn: Alan Root (aroot@archerlaw.com). Service via e-mail is acceptable.

**PLEASE TAKE FURTHER NOTICE** THAT ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER MAY BE FOREVER BARRED AND ESTOPPED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS FREE AND CLEAR OF LIENS CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AFFECTED THEREUNDER.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures Order contemplates a process to transfer, assume and assign Assigned Contracts.  To the extent that the Trustee intends to transfer, assume and assign any Assigned Contracts counterparty will receive a separate notice consistent with the Bidding Procedures Order entered by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Sale Hearing is subject to the full terms and conditions of the Sale Motion, Bidding Procedures Order, and Bidding Procedures, which shall control in the event of any conflict and the Trustee encourages parties in interest to review such documents in their entirety.  A copy of the Sale Motion may be obtained from Archer & Greiner, P.C., Attn: Alan M. Root, Esq. (aroot@archerlaw.com; (302) 777-4350), 300 Delaware Avenue, Suite 1100, Wilmington, DE 19801.

Dated: _____, 2022

/s/ Alan M. Root
Alan M. Root (No. 5427)
ARCHER & GREINER, P.C.
300 Delaware Avenue, Suite 1100
Wilmington, DE 19801
Telephone: 302-777-4350
Facsimile:  302-777-4352
E-mail: aroot@archerlaw.com

*Counsel for the Chapter 7 Trustee*

225625187v1

**<u>Exhibit 3</u>**

Cure Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| Electric Last Mile Solutions, Inc., *et al.*, [1] | Case No. 22-10537 (MFW) |
| Debtors. | (Jointly Administered) |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT**
**OF CONTRACTS AND LEASES**

      **PLEASE TAKE NOTICE THAT** on September __, 2022, David W. Carickhoff, the chapter 7 trustee (the "Trustee") of the bankruptcy estates of the above-captioned debtors (the "Debtors"), filed the *Amended Motion for Entry of Orders (I) (A) Establishing Bid Procedures for the Sale of Substantially all of the Debtors' Assets; (B) Approving a Breakup Fee; (C) Scheduling a Hearing to Consider the Proposed Sale and Approving the Form and Manner of Notice Thereof; (D) Establishing Procedures Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (D) Granting Related Relief and (II) (A) Approving the Proposed Sale; (B) Approving the Assumption and Assignment of Executory Contracts and/or Unexpired Leases; and (C) Granting Related Relief* (the "Sale Motion").[2]

      **PLEASE TAKE FURTHER NOTICE** that, by the Sale Motion, the Trustee sought, among other things, to sell all of the Debtors' right title and interest in to substantially all of the Debtor's assets (collectively, the "Acquired Assets").

      **PLEASE TAKE FURTHER NOTICE** that on ____, 2022, the Bankruptcy Court entered an Order (the "Bidding Procedures Order") approving the Bidding Procedures (the "Bidding Procedures") as set forth in the Sale Motion, which set the key dates and times related to the sale of the Acquired Assets.

      **PLEASE TAKE FURTHER NOTICE** that the Trustee has indicated on Schedule 1 attached hereto the list of Assigned Contracts that may be transferred, assumed and assigned to the Successful Bidder along with the cure amounts that the Trustee believes must be paid to cure all defaults (in each instance, the "Cure Amount").

      **PLEASE TAKE FURTHER NOTICE** that any non-Debtor party to an Assigned Contract shall be required to file an objection to the Cure Amount (the "Cure Objection") by _____ **at 4:00 p.m. (ET)** (the "Cure Objection Deadline").  Any Cure Objection must (i)

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors are: Electric Last Mile Solutions, Inc. (8711) and Electric Last Mile, Inc. (0357)

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Sale Motion or the Bidding Procedures (defined herein).

be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; and (iii) state with specificity what cure the party to the Assigned Contract believes is required with appropriate documentation in support thereof.  If no objection is timely received, the Cure Amount set forth in this Notice shall be controlling notwithstanding anything to the contrary in any Assigned Contract or other document as of the date of this Notice.  Any Cure Objections not resolved between the parties shall be heard at a hearing fixed by the Court.

**PLEASE TAKE FURTHER NOTICE** that any counterparty to any Assigned Contract who wishes to object to the transfer, assumption and assignment of any Assigned Contract to the Successful Bidder ("<u>Assumption and Assignment Objection</u>"), including any objection based on lack of adequate assurance of future performance, shall file an objection no later than **_____ at 4:00 p.m. (ET)**.  Any Assumption and Assignment Objection must (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the District of Delaware; and (iii) state with specificity the legal and factual basis for such objection, and, if based on lack of adequate assurance of performance of the Assigned Contract, state with specificity the adequate assurance the party to the Assigned Contract believes is required with appropriate documentation in support thereof.

**PLEASE TAKE FURTHER NOTICE** that counterparties to Assigned Contracts may obtain financial and other adequate assurance information regarding the Successful Bidder by contacting counsel to the Trustee, Alan M. Root (302-356-6623; aroot@archerlaw.com).

**PLEASE TAKE FURTHER NOTICE** that any Cure Objection or Assumption and Assignment Objection shall be filed with the Clerk of the Court and served via e-mail on: (a) the Trustee, David W. Carickhoff (dcarickhoff@archerlaw.com); (b) counsel for the Trustee, Attn: Alan M. Root (aroot@archerlaw.com); (c) Office of the United States Trustee, Attn: Linda J. Casey (linda.casey@usdoj.gov); and (d) counsel for the Successful Bidder, Attn: _____.

**PLEASE TAKE FURTHER NOTICE** that any counterparty to any Assigned Contract who does not file a Cure Objection by the Cure Objection Deadline, shall be barred and estopped from objecting to the Cure Amount or asserting or claiming any Cure Amount (other than the Cure Amount listed on this Notice) against the Trustee, the Debtors' estates or the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that any counterparty to an Assigned Contract who does not timely file an Assumption and Assignment Objection shall be deemed to have consented to the transfer, assumption and assignment of its Assigned Contract to the Successful Bidder and will be forever barred and estopped from objecting to such transfer, assumption and assignment on account of the Cure Amount, lack of adequate assurance or any other grounds.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Potential Assumption and Assignment of Contracts and Leases is subject to the full terms and conditions of the Sale Motion, Bidding Procedures Order, Bidding Procedures, and Sale Order which shall control in the event of any conflict and the Trustee encourages parties in interest to review such documents in their entirety.  A copy of the Sale Motion, Bidding Procedures Order, Bidding Procedures, and/or Sale Order may be obtained from Archer & Greiner, P.C., Attn: Alan M. Root, Esq. (aroot@archerlaw.com; (302) 777-4350).

Dated: _____, 2022

_/s/ Alan M. Root_

Alan M. Root (No. 5427)
Bryan J. Hall (No. 6285)
ARCHER & GREINER, P.C.
300 Delaware Avenue, Suite 1100
Wilmington, DE 19801
Telephone: 302-777-4350
Facsimile:  302-777-4352
E-mail: aroot@archerlaw.com

_Counsel for the Chapter 7 Trustee_

## **SCHEUDLE 1**

**Assigned Contracts**[3]

| Title/Description of Contract | Contract Counterparties | Cure Cost |
|---|---|---|
| | | |

225625186v1

---

[3] Each Assigned Contract on this Schedule shall be interpreted to include all amendments, supplements, and modifications thereto.