# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Electric Last Mile Solutions, Inc., *et al.*,[1] | Case No. 22-10537 (MFW)<br>(Jointly Administered) |
| Debtors. | **Re: Dkt. No. 99** |

**DECLARATION OF NEIL GUPTA IN SUPPORT OF ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 6006 (I) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

I, Neil Gupta, hereby declare (the "Declaration") that the following is true and correct to the best of my knowledge, information, and belief.

1. I am over 18 years of age and am a Managing Director of SSG Advisors, LLC ("SSG") and its registered broker/dealer affiliate, SSG Capital Advisors, LLC. I have over 10 years of experience in advising businesses facing operational or financial challenges, including bankruptcy proceedings. I have extensive experience: (i) marketing companies or their assets for sale, including experience marketing companies in distress and companies in bankruptcy cases; (ii) raising capital for special situation transactions; and (iii) restructuring companies' balance sheets both in court and out of court. Since 2011, I have worked on over 100 sale, refinancing and restructuring transactions in North American and Europe for companies facing operational and/or financial challenges, including more than 40 bankruptcy transactions. I am Chairman of the

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors are: Electric Last Mile Solutions, Inc. (8711) and Electric Last Mile, Inc. (0357)

Philadelphia Chapter of the Turnaround Management Association, Treasurer for the Consumer Bankruptcy Assistance Project and Board Member for the New York Institute of Credit.

2. SSG is an internationally recognized special situation investment banking firm with its office outside of Philadelphia. Since its founding, SSG has completed over 400 investment banking assignments. SSG's professionals have expertise in mergers and acquisitions, private placements, financial restructurings, valuations, licensing transactions, and financial advisory services. Moreover, SSG has substantial expertise in advising troubled companies in numerous situations, including in connection with asset sales and related issues.

3. Through SSG, I am the investment banker for David W. Carickhoff, the chapter 7 trustee (the "Trustee") of the bankruptcy estates of the above-captioned debtors (collectively, the "Debtors"). SSG's principal duties have been marketing and negotiating in connection with the Trustee's efforts in to sell substantially all of the Debtors' assets in one or more value maximizing transactions.

4. I make this declaration in support of the Trustee's Amended Motion [Dkt. No. 99] (the "Sale Motion")[2] seeking entry of an Order: (i) approving the sale of substantially all of the Debtors' assets (the "Acquired Assets"), (ii) approving the assumption and assignment of executory contracts and unexpired leases, and (iii) granting related relief (the "Sale Relief").

5. I have reviewed the facts set forth in the Sale Motion and believe that such facts are true and correct to the best of my knowledge, information, and belief.

6. I am authorized to submit this Declaration on behalf of the Trustee. Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, I could and would testify thereto.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

7. For the reasons stated herein and in the Sale Motion, I believe it is appropriate that the Sale Motion be granted in its entirety and that an Order approving the Sale of the Acquired Assets to Mullen Automotive Inc. (the "Stalking Horse Bidder") be entered as promptly as possible.

## THE MARKETING PROCESS

8. The Trustee and his advisors engaged in an extensive marketing process for purchasers for the Debtors' assets. This marketing process lasted over 90 days, through and including the Bid Deadline of October 3, 2022.

9. The Trustee, with the assistance of SSG and his other advisors, developed a list of 246 strategic and financial parties that were identified as potentially having an interest in, and the financial resources to, consummate a purchase of the Debtors' assets (the "Contact Parties"). Each of the Contact Parties was sent a sale teaser and/or was separately contacted by the Trustee, SSG or the Trustee's other advisors.

10. 40 parties executed a non-disclosure agreement with the Trustee (an "NDA"). As parties executed an NDA they were provided with access to a virtual data room established by the Trustee, with the assistance of SSG and the Trustee's other advisors. The Trustee's professionals and independent contractors also made themselves available to parties to answer questions regarding the Debtors' operations and assets and multiple parties performed site tours of the Debtors' facilities.

11. I believe that the marketing process was appropriate and fulsome under the circumstances. I further believe that the universe of potential buyers for the Debtors' assets was substantially canvassed.

12.     Based on my experience and my knowledge, the Trustee and his advisors conducted a fair and open marketing and sale process. The sale process, the Bidding Procedures, and the actions of the Trustee and his advisors in connection therewith were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase some or all of the Debtors' assets. Further, based on my experience and knowledge, the process conducted by the Trustee pursuant to the Bid Procedures Order allowed the Trustee to obtain the highest and best value for the Acquired Assets under the circumstances.

## THE SUCCESSFUL BID AND BIDDER

13.     As a result of the marketing process, the Trustee and Mullen Automotive Inc. entered into a stalking horse asset purchase agreement (collectively with all exhibits and schedules, the "Stalking Horse APA") for the sale of substantially all of the Debtors' assets. The total consideration to be provided by the Stalking Horse Bidder under the Stalking Horse APA exceeds $92 million.

14.     Other than the Stalking Horse Bid, the Trustee did not receive any Qualified Bids for some or all of the Acquired Assets by the Bid Deadline. The Trustee did receive one bid for certain assets, but determined, in his business judgment, and in consultation with his advisors, that such bid was not a Qualified Bid. Accordingly, in accordance with the Bidding Procedures, the Trustee has declared the Stalking Horse Bid as the Successful Bid and is pursuing approval of the Stalking Horse Bid.

15.     I believe that the Stalking Horse Bid is the highest and best offer received by the Trustee after extensive marketing, including through the Bidding Procedures, and maximizes the value of the Acquired Assets under the circumstances.

16. To the best of my knowledge, the Stalking Horse Bidder is not an "insider" or "affiliate" of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code.

17. I understand that the Stalking Horse Bidder may have retained Jason Luo and/or James Taylor, former executives of the Debtors (the "<u>Consultants</u>"), to assist the Stalking Horse Bidder in connection with due diligence regarding the Stalking Horse Bid and that the Consultants may continue to assist the Stalking Horse Bidder post-sale. I further understand that the Consultants are not co-investors with the Stalking Horse Bidder in connection with the Stalking Horse Bid and the Consultants do not serve in any officer position of the Stalking Horse Bidder.

18. To the best of my knowledge, the Stalking Horse Bidder and its counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the sale of the Debtors' assets. In particular, to the best of my knowledge, the Stalking Horse Bidder (i) at all times complied with the terms of the Bidding Procedures, (ii) did not engage in any collusive bidding or other misconduct with respect to the Stalking Horse Bid, and (iii) conducted all negotiations with respect to the Stalking Horse Bid at arms' length and in good faith.

19. To the best of my knowledge, the transactions contemplated by the Stalking Horse APA were not proposed, and the Stalking Horse Bidder does not propose to consummate the transactions contemplated by the Stalking Horse APA for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors.

20. I believe that the total consideration to be provided by the Stalking Horse Bidder under the terms of the Stalking Horse APA is fair and adequate under the circumstances and constitutes reasonably equivalent value and fair consideration for the Acquired Assets.

21.    I respectfully submit that a sale of the Acquired Assets to the Stalking Horse Bidder free and clear of Liens is the best way to maximize the value of the Debtors' estates under the circumstances. Any sale other than one free and clear of all Liens would adversely impact the Debtors' estates, creditors and other parties in interest, and would yield substantially less value for the Acquired Assets.

22.    It is my understanding that the Trustee intends to close on the transactions contemplated by the Stalking Horse APA as soon as reasonably practicable in order to avoid substantial additional carrying costs associated with the Acquired Assets. Accordingly, I believe that a waiver of the 14 day stay under Bankruptcy Rule 6004(h) or any similar rule is necessary.

## CONCLUSION

23.    For the reasons set forth herein and in the Sale Motion, I believe that the Court should grant the Sale Relief requested by the Sale Motion and approve the sale of the Acquired Assets to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse APA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 10, 2022                      */s/ Neil Gupta*
                                                                  Neil Gupta